2023 IL App (1st) 230760-U

FOURTH DIVISION
November 22, 2023

No. 1-23-0760

**NOTICE**: This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

**IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT**

| | |
|---|---|
| *In re* S.M., a Minor, <br><br> Appellee <br><br><br> (The People of the State of Illinois, Petitioner-Appellee, *v.* Stephanie M. and Pierre M., Respondents (Stephanie M., Respondent-Appellant)). | Appeal from the Circuit Court of Cook County <br><br> No. 21 JA 00989 <br><br> The Honorable Demetrios Kottaras, Judge, presiding. |

JUSTICE OCASIO III delivered the judgment of the court.
Presiding Justice Rochford and Justice Hoffman concurred in the judgment.

**ORDER**

¶ 1    *Held:*    The circuit court's finding of neglect due to an injurious environment was not against the manifest weight of the evidence and the circuit court's judgment is affirmed.

¶ 2    Following an adjudication hearing, the circuit court found that the minor, S.M., was neglected due to an injurious environment. Following a disposition hearing, the court made S.M. a ward of the court with a permanency goal of returning home within five months. On appeal, Stephanie M., S.M.'s mother, argues the circuit court's finding of neglect was against the manifest weight of the evidence. For the following reasons, we affirm.

¶ 3                                    BACKGROUND

¶ 4    Respondent, Stephanie M., gave birth to S.M. on October 13, 2021. On October 21, 2021, S.M. was taken into protective custody by the Department of Children and Family Services

(DCFS). On October 25, 2021, the State filed a petition for adjudication of wardship alleging that S.M. was neglected due to an injurious environment and abused due to a substantial risk of physical injury. The circuit court held a temporary custody hearing on October 25, 2021, and granted temporary custody of S.M. to the DCFS guardianship administrator. Following the temporary custody hearing, the circuit court ordered a DNA test for Pierre M., S.M.'s putative father, which confirmed Pierre M. was S.M.'s father.[1]

¶ 5                                    I. Adjudication Hearing

¶ 6     The circuit court held an adjudication hearing on October 18, 2022 and March 29, 2023. At the hearing, the State withdrew the allegation of abuse due to substantial risk of injury without prejudice and proceeded solely on the allegation of neglect due to injurious environment.

¶ 7     Leslie James, a DCFS child protection investigator, testified for the State. James testified she was assigned to investigate a call that was received on the DCFS hotline regarding S.M. During her investigation, James spoke with Pierre M., who stated he was not sure if he was father of S.M. and he wanted a paternity test. James testified the decision was made to take S.M. into protective custody because Stephanie M. had two open cases with DCFS and Stephanie M. had services to complete.

¶ 8     The State also called Shirley Mitchell, a case worker from Kids Above All, to testify. Mitchell testified she has managed cases involving Stephanie M.'s four other children, Pe. M., Pi. M., Pr. M., and D.M., since November 2020. In October 2021, when S.M. was born, Pe. M. and Pi. M. were living with Pierre M., and Pr. M. and D.M. were in foster care in Will County. Mitchell testified Stephanie M. began individual therapy in 2018. Stephanie M. was recommended for long-term therapy due to her history of trauma and mental health concerns.

---

[1]   Pierre M. is not a party to this appeal.

¶ 9 Mitchell also testified Stephanie M. had been allowed unsupervised visits with Pe. M. and Pi. M.; however, in June 2021 those visits were temporarily suspended when Pierre M. obtained an order of protection against Stephanie M. after she damaged his car multiple times and attempted to fight him and his paramour. Mitchell also learned of other incidents involving Stephanie M. and Pierre M. In January 2021, Stephanie M. was involved in an altercation with a woman she believed to be Pierre M.'s paramour. In April 2021, Stephanie M. threatened Pierre M. In June 2021, there were hotline calls alleging Pierre M.'s paramour Tiffany had threatened to harm the children and that Pierre M. was selling drugs out of the home. Additionally, in August 2021, there were hotline calls reporting that an adult in the home was "smacking" the minors and that the children had been seen hanging out of windows. Mitchell also testified there was a prior domestic-violence incident between Stephanie M. and the father of D.M. During this incident, Stephanie M. and D.M.'s father were arguing inside a car when the father got out and busted the window of the car while D.M. was in the backseat.

¶ 10 In the summer of 2021, Stephanie M. informed Mitchell that Tiffany was living with Pierre M. Stephanie M. told Mitchell that Tiffany had threatened to poison the children and owned a gun. At the time, Mitchell was not aware of Tiffany's existence. Stephanie M. also believed Pierre M. was using the children to manipulate her.

¶ 11 Pierre M. denied Stephanie M.'s allegations that Tiffany owned a gun. He stated the photo of Tiffany with a gun was from 2018. Pierre M. also stated Tiffany did not live in the home; however, Mitchell discovered Tiffany's name was on the lease.

¶ 12 Mitchell testified Stephanie M. had completed certain services toward reunification including substance abuse and parenting classes and domestic-violence services. Stephanie M. had previously attended individual therapy and was "successfully discharged" in 2019. She was

also directed to complete child-parent psychotherapy with Pr. M. Stephanie M. began child-parent psychotherapy; however, the psychotherapist determined Stephanie M. needed additional individual therapy to address her domestic-violence issues. The child-parent psychotherapy was discontinued. At the time of S.M.'s birth, Stephanie M. was still engaged in individual therapy, which she started in February 2021 to address these issues, and child-parent psychotherapy had not been resumed.

¶ 13    The State admitted seven exhibits into evidence, including prior adjudication and disposition orders for Stephanie M.'s four other children, a copy of the order of protection obtained by Pierre M., copies of reports from DCFS and Kids Above All, a parenting-capacity assessment, and a DCFS service plan.

¶ 14    The DCFS domestic-violence clinical referral report stated there was a history of intimate partner violence between Stephanie M. and Pierre M., with the children being present. In June 2021, Stephanie M. damaged Pierre M.'s property, which led to Pierre M. obtaining an order of protection. Additionally, the report noted Stephanie M. had completed domestic-violence victim's support group counseling but needed to attend individual therapy. The report noted individual therapy would help Stephanie M. establish strategies for effective co-parenting and apply the information she learned in domestic-violence counseling in her daily life.

¶ 15    The parenting-capacity assessment provided that as a child Stephanie M. was exposed to her mother's drug abuse, her stepfather's alcohol abuse, and domestic violence between her mother and stepfather. Additionally, Stephanie M. was both physically and sexually abused by her stepfather. Stephanie M. had a history of "intensely violent and insecure relationships" and did not have "models of appropriate behaviour." The assessment stated Stephanie M. replicated patterns she observed in her childhood. The assessment also stated Stephanie M. "attempts to

manipulate others, fails to assume responsibility, and verbally transgresses against others." Stephanie M. was diagnosed with adjustment disorder with mixed anxiety and depressed mood and she had traits of antisocial personality disorder. Stephanie M.'s history interfered with her ability to adequately care for her children. The assessment recommended long-term individual therapy for Stephanie M.

¶ 16    The DCFS service plan noted Stephanie M. had successfully completed some of her services and she needed to "successfully engage in individual therapy to address domestic violence, trauma and its effects on her children." The service plan noted Stephanie M. had been consistently attending therapy since February 2021.

¶ 17    The circuit court found that the State had proved its case by a preponderance of the evidence. In its oral ruling, the circuit court stated Stephanie M.'s ongoing mental health issues, her need for individual therapy, and the instances of domestic violence between Stephanie M. and Pierre M., where Stephanie M. was the perpetrator, were issues that were unresolved. The circuit court emphasized its main concern was the continued instances of domestic violence. The circuit court entered an adjudication order finding that S.M. was neglected because her environment was injurious to her welfare and stated the "mental health issues and domestic violence between parents with mother as perpetrator are unresolved and cause concerns for the court."

¶ 18                                    II. Disposition Hearing

¶ 19    Immediately following the adjudication hearing, the circuit court held a disposition hearing. The State called Mitchell to testify. Additionally, the State moved into evidence nine exhibits, which included a DCFS integrated clinical social assessment, psychology consultations

and psychiatric evaluations, reports from Stephanie M.'s individual therapy provider, court reports, and a visitation log for Stephanie M.'s visits with S.M.

¶ 20 At the conclusion of the deposition hearing, the circuit court made S.M. a ward of the court, finding Stephanie M. and Pierre M. unable to parent S.M. The circuit court set a permanency goal for S.M. to return home within five months.

¶ 21 Stephanie M. timely appealed.[2]

¶ 22                                    ANALYSIS

¶ 23 Stephanie M. argues that the circuit court's finding of neglect was against the manifest weight of the evidence and that, in making the finding, the court erroneously adopted a *per se* rule of anticipatory neglect. "A finding is against the manifest weight of the evidence only if the opposite conclusion is clearly evident." *In re A.P.*, 2012 IL 113875, ¶ 17.

¶ 24 In her notice of appeal, Stephanie M. states she is appealing both the adjudication and disposition orders. However, Stephanie M.'s brief only challenges the finding of neglect. Therefore, we proceed only with a review of the circuit court's adjudication order. See Ill. S. Ct. R. 341(h)(7) (eff. Oct. 1, 2020).

¶ 25 The Juvenile Court Act of 1987 (the Act) (705 ILCS 405/1-1 *et seq.* (West 2020)) establishes the procedures and criteria for determining whether to make a minor a ward of the court. *In re Athur H.*, 212 Ill. 2d 441, 462 (2004). The trial court must employ a two-step process to make its determination. *A.P.*, 2012 IL 113875, ¶ 18. At the adjudication hearing, the trial court must determine whether the child is abused, neglected, or dependent. 705 ILCS 405/2-21(1) (West 2020). If the trial court finds that the child is abused, neglected, or dependent, then it holds

---

[2] The notice of appeal was filed on April 28, 2023. The court allowed the record to be filed *insanter* past the deadline, and each party was given an extension of time to file its brief. We therefore find that there is good cause for issuing our decision more than 150 days after the notice of appeal was filed. See Ill. S. Ct. R. 311(a)(5) (eff. July 1, 2018).

a disposition hearing to determine whether it is in the best interest of the child that she be made a ward of the court. 705 ILCS 405/2-21(2) (West 2020).

¶ 26    The State must prove its allegations of neglect by a preponderance of the evidence. *In re Z.L.*, 2021 IL 126931, ¶ 61. The State must establish the allegations of neglect are more probably true than not. *Id.*

¶ 27    The Act's definition of a neglected minor includes any minor "whose environment is injurious to his or her welfare." 705 ILCS 405/2-3(1)(b) (West 2020). "Neglect" is defined as the "failure to exercise the care that circumstances justly demand." *Arthur H.*, 212 Ill. 2d at 463. "[C]ases involving allegations of neglect and adjudication of wardship are *sui generis*, and must be decided on the basis of their unique circumstances." *Id.* "Injurious environment" is an "amorphous concept that cannot be defined with particularity, but has been interpreted to include the breach of a parent's duty to ensure a safe and nurturing shelter for her children." (Internal quotation marks omitted.) *In re Jordyn L.*, 2016 IL App (1st) 150956, ¶ 28.

¶ 28    The circuit court found S.M. was neglected under the theory of anticipatory neglect. The theory of anticipatory neglect seeks to protect children who have a probability of becoming neglected or abused due to living with someone who has already been found to have neglected or abused another child. See *In re Kamesha J.*, 364 Ill. App. 3d 785, 793 (2006). While there is no *per se* rule, the proof of neglect of one child establishes the neglect of another child, and "proof of neglect of one minor 'shall be admissible evidence' on the issue of the neglect of any other minor for whom the parent is responsible." *Arthur H.*, 212 Ill. 2d at 468 (quoting 705 ILCS 405/2-18(3) (West 2000)). "Each case concerning the adjudication of minors must be reviewed according to its own facts." *In re Edricka C.*, 276 Ill. App. 3d 18, 31 (1995).

¶ 29   Stephanie M. contends that the circuit court found S.M. was neglected based on findings of neglect for her other children. Specifically, Stephanie M. relies on *In re Edricka C.*, 276 Ill. App. 3d 18 (1995), to support her contention that the State had to prove there were specific instances of neglect towards S.M.

¶ 30   In *Edricka C.*, the trial court found the minor children, Edricka and Zemaj, had been neglected based on previous findings that the respondent had beaten an older child and had left other children unsupervised. *Edricka C.*, 276 Ill App. 3d at 20. During the adjudication hearing, a DCFS child welfare specialist testified that Edricka and Zemaj had lived with the respondent without incident from birth until the time the petitions for adjudication of wardship were filed. *Id.* at 21. The specialist also testified the respondent had completed certain services while living out of state and had supervised visits with her oldest daughter as well as unsupervised visits with her other five children. *Id.* In its ruling, the trial court "explained that even though these minors were originally brought before it on medical neglect allegations, 'the court cannot ignore the prior history of this mother and father with their children and dismiss petitions on these two infants.' " *Id.* at 25. On appeal, the findings of neglect were reversed. *Id.* at 32. The court found that "such evidence of past sibling abuse [was] admissible, but, by itself, insufficient to show that abuse and neglect [were] imminent," as the record showed Edricka had been in perfect health, the respondent had sought and completed counseling services, and the respondent had started parenting classes. *Id.* at 29-30.

¶ 31   Here, the evidence at S.M.'s adjudication hearing is vastly different from the evidence presented in *Edricka C.* The circuit court's finding of neglect was not based solely on the prior findings of neglect for Stephanie M.'s other children. Notably, the circuit court, in both its oral finding and the adjudication order, stated its concerns were Stephanie M.'s mental health issues

and her recent instances of domestic violence. The record shows Stephanie M. made reasonable progress toward reunification with her children. The evidence at the adjudication hearing detailed Stephanie M.'s progress in therapy. However, at the time of S.M.'s birth, Stephanie M. was not able to complete child-parent psychotherapy. In order to complete this service, Stephanie M. needed to first complete additional individual therapy, which was still ongoing when S.M. was born. The parenting-capacity assessment highlighted Stephanie M. had a history of physical and sexual abuse as well as neglect and domestic violence. The assessment also noted that Stephanie M. had traits of antisocial personality disorder and that her personal history, along with a lack of "models of appropriate behaviour," interfered with Stephanie M.'s ability to adequately care for her children and demonstrate consistent parenting skills.

¶ 32    Additionally, testimony and evidence at the adjudication hearing showed Stephanie M. perpetrated acts of domestic violence against Pierre M. months prior to S.M.'s birth. These instances led to a protection order, which prevented Stephanie M. from seeing her children that lived with Pierre M.

¶ 33    The record reflects that, while prior findings of neglect with respect to Stephanie M.'s four other children were admitted into evidence and considered by the circuit court, the circuit court did not adopt a *per se* rule of anticipatory neglect. In making its determination, the circuit court considered Stephanie M.'s need for continued services and the instances of domestic violence that occurred shortly before S.M.'s birth. See *In re Tyianna J.*, 2017 IL App (1st) 162306, ¶ 54 (holding that mother's ongoing mental health issues and parental deficiencies supported a finding of anticipatory neglect). We find the circuit court's finding of neglect was not against the manifest weight of the evidence.

¶ 34                                CONCLUSION

¶ 35    For the foregoing reasons, we affirm the judgment of the circuit court of Cook County.

¶ 36    Affirmed.